Curia, per Johnson, Ch.
I have been deeply impressed with the delicacy and importance of the question involved in this case, and after the best consideration I have been able to bestow upon it, my conclusion is, that the decree of the circuit court ought to be affirmed.
The authorities all agree that persons non compos men-tis, or in the language of Chancellor Kent, those who have not the regular use of the understanding sufficient to deal with discretion in the common affairs of life, are incapable *575 of agreeing to any contract, and of course, to that of matrimony; and in Ex parte Barnsby, 3 Atk. 167, Lord Hard-wick says that “the terms non compos mentis ” and “of unsound mind,” mean the same thing, and have a determinate legal signification, importing not weakness of understanding, but a total deprivation of sense.” These definitions are as precise and clear as could well be given on the subject, and are alike applicable to idiots and lunatics. The great difficulty is in their application to particular cases, for such is the diversity and inconsistency of actions which mark and distinguish the characteristics of the minds of different men, sane and insane, that no rule could be framed to meet them all. Collinson, in his treatise on Idiots, yol. 1, page 43, (note) relates, on the authority of Bry-dal, who had, written on the same subject, several amusing anecdotes, exhibiting particular instances of astonishing acuteness and profoundness of judgment manifested on these occasions by natural fools and idiots, one of whom he describes as the most notorious idiot in all Paris, from vvhence he deduces the conclusion, that sanity or insanity cannot depend upon, or be collected from, particular actions, unless every part of a person’s behavior constituted unequivocal evidence of his habit of mind.
My much valued friend, the late Dr. James Davis, was, for many years, the physician of the Lunatic Asylum in this place, and I have often heard him speak of the astuteness and cunning manifested by the most desperate and hopeless patients of the institution, and such has been the result of my own limited observations in regard to unfortunate persons in this condition.
The case of the Countess of Portsmouth vs. the Earl of Portsmouth, 1 Haggard Eccle. Rep. 355, found in 3 Eng. Ecc. Rep. 155, will, in some degree, illustrate this. That, like this, involved the validity of the marriage between the parties, brought into question on the ground of the incapacity of the defendant to enter into the contract of marriage, and the exercise of undue and improper influence over him to obtain the marriage. And Sir John Nichols remarks that in relation to the incapacity or unsoundness of mind of the Earl, the case set up was of a mixed nature, not absolute idiocy, but weakness of understanding; not *576 continued insanity, but delusions and irrationality on particular subjects, a mixture of both by no means uncommon. The evidence shews that the incapacity of the Earl was natural and not accidental. In his youth he was capable of receiving instruction and improvement, and could learn arithmetic and the languages. Tn 1790, he joined his father in suffering a common recovery, and in making a new family settlement to provide for younger children. The marriage took place in 1799. In 1802, he was examined as a witness in court, and it was a matter of surprize and common talk that he did so well. He behaved with ordinary propriety at parties, and in the company of persons who commanded his respect. Was capable of making a few observations on the state of the weather, or on horses and gaming; attended the public meetings, races and country balls; but on being left to himself and unrestrained, he indulged in practices so irrational and unnatural, as to be, in some instances, bordering on idiocy, and in others to be attended with actual delusion— a perversion of mind, a deranged imagination, a fancy and belief of the existence of things, which no rational being endowed with the powers of reasoning could believe to exist. He was carried to the house of one Hanson, who was the confidential solicitor of the family, and one. of the trustees, who, within a week, obtained from him a settlement, and married him to one of his 'daughters, without the knowledge of his family or friends, and the whole court pronounced that the marriage was null and void, he being at the time not of sound mind sufficient to enter into such a contract; and also, that the marriage was effected by fraud and circumvention. That case illustrates very fully the rule laid down by Collinson, that the fact of soundness of mind does not depend on, nor can it be collected from, particular actions, but upon the general frame and habit of the mind.
On looking, through the whole evidence in the case under consideration, which will be found attached to the decree of the circuit court, it will be seen that the prevailing characteristic of the intestate’s mind was the absence of the reasoning faculties, and although it occasionally manifested itself in particular circumstances, as in the instance *577 of his wife’s separating from him, and the philosophic manner in which he reconciled himself to it, it may be, that it was the result of correct reasoning, but it is not improbable that it had its origin in the consolations offered to him by his friends, the memory of which he retained, rather than in his own reflections. However that may be, it is only in rare instances that we can detect any reasoning powers at all, and all the evidence tends to the conclusion that he was incapable of transacting the ordinary affairs of life; and as remarked in the circuit court decree, I have no doubt but that the complainant availed herself of this imbecility of mind, and the natural instincts which might prompt him to marry, either to induce him to propose marriage, or to propose it herself, with the expectation of securing his property to herself; there could have been no other motive on her part, to enter into such a contract with such a man.
I am, therefore, of opinion, that the appeal should be dismissed, and the decree of the circuit court affirmed, and that is the opinion of this court. Appeal dismissed.
Dunkin, Chancellor, concurred.